IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CINDY ALVAREZ, on behalf of the HealthCare Appraisers, Inc. ESOP, and on behalf of a class of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company,<br><br>Defendant. | Case No. |

## COMPLAINT

Plaintiff Cindy Alvarez, by her undersigned attorneys, on behalf of the HealthCare Appraisers, Inc. ESOP, and similarly situated participants in the Plan and their beneficiaries, alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiff Cindy Alvarez ("Plaintiff") brings this suit against Wilmington Trust, N.A. as successor to Wilmington Trust Retirement and Institutional Services Company (together, "Wilmington Trust"), the trustee for the HealthCare Appraisers, Inc. ESOP (the "Plan"), an employee stock ownership plan, when the Plan acquired shares of HealthCare Appraisers, Inc. ("HAI") in 2014.

2.      Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who was vested in shares of HAI allocated to her account in the Plan.

1

3. This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by Wilmington Trust when it caused the Plan to buy shares of HAI for more than fair market value in 2014 and other relief.

4. As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendant's violations of ERISA.

5. At all relevant times, HAI was a privately held company and a party in interest to the Plan. On August 26, 2014, the Plan acquired 80% of HAI's stock, 800,000 shares, for $28 million, which was financed by a $10 million term note, junior subordinated notes from the Selling Shareholders (Todd Mello, Daryl P. Johnson, Fred M. Lara, and Scott M. Safriet), and promissory notes to the Selling Shareholders. HAI issued warrants to the Selling Shareholders in exchange for the remaining 20% of HAI stock, which represented 40% of the equity of HAI.

6. Wilmington Trust represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf.

7. The ESOP Transaction allowed the Selling Shareholders to unload their interests in HAI above fair market value and saddle the Plan with tens of millions of dollars of debt to finance the Transaction. Wilmington Trust failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff.

8. The Selling Shareholders are parties in interest because each of them owned 10% or more of HAI stock and/or was an officer or director of HAI.

9.      Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by her and similarly situated participants, resulting from Wilmington Trust's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching its fiduciary duties under ERISA.

## JURISDICTION AND VENUE

10.      This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Wilmington Trust to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against Wilmington Trust, to restore to the Plan any profits that have been made by breaching fiduciaries through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.      This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant Wilmington Trust resides or may be found in this District, and because some of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

13.      Plaintiff Cindy Alvarez is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since 2014. She was employed by HAI from April 14, 2014 through July 1, 2020. She vested by the Plan's terms in shares of HAI in her Plan account.

14.      Defendant Wilmington Trust is a trust company chartered in Delaware. Its headquarters is at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust is

a subsidiary of M&T Bank Corporation. M&T Bank Corporation is headquartered in Buffalo, New York.

15. Wilmington Trust was the Trustee of the Plan at the time of the ESOP Transaction. Wilmington Trust was a "fiduciary" under ERISA because it was the Trustee. As Trustee, Wilmington Trust had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on the Plan's behalf. Wilmington Trust was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all times that it was Trustee of the Plan.

16. Wilmington Trust's power and authority does not include the power and authority to interpret the terms of the written Plan document.

## FACTUAL ALLEGATIONS

17. HAI is headquartered in Boca Raton, Florida. HAI is a business appraisal firm specializing in healthcare firm appraisals. HAI has approximately 96 employees, with locations in Baton Rouge, Chicago, Dallas, Denver, Detroit, Nashville, and Philadelphia. HAI has been at all times a private company. There is and was no public market for HAI stock.

18. HAI was formed in 2000.

19. HAI is an S corporation. HAI stock is not readily tradable on an established securities market.

20. HAI adopted the Plan effective January 1, 2014.

21. The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

22. The Plan was designed to invest primarily in the employer securities of HAI.

23. The Plan's principal asset has been HAI stock at all times since the ESOP Transaction.

24. The Plan is an individual account plan under which a separate individual account was established for each participant.

25. HAI is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

26. Employees of HAI participate in the Plan.

27. HAI is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

28. HAI is and was an ERISA fiduciary to the Plan as its administrator.

29. HAI is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

30. HAI or the Selling Shareholders appointed Wilmington Trust as Trustee of the Plan. As Trustee, Wilmington Trust had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for HAI stock.

31. As Trustee for the Plan, it was Wilmington Trust's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and HAI, including acquisitions of HAI stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

32. On August 26, 2014, the Plan acquired 80% of HAI's stock, 800,000 shares, for $28 million, which was financed by a $10 million term note, junior subordinated notes from the Selling Shareholders (Todd Mello, Daryl P. Johnson, Fred M. Lara, and Scott M. Safriet), and

promissory notes to the Selling Shareholders. HAI issued warrants to the Selling Shareholders in exchange for the remaining 20% of HAI stock, which represented 40% of the equity of HAI.

33. The Selling Shareholders were the shareholders of HAI stock at the time of the ESOP Transaction.

34. The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction, as 10 percent or more shareholders of HAI, directly or indirectly, and/or as directors of HAI or persons with powers or responsibilities similar to directors, and/or as officers of HAI or persons with powers or responsibilities similar to officers, and/or as employees of HAI.

35. The Selling Shareholders were advised by CSG Partners ("CSG") in the ESOP Transaction.

36. Wilmington Trust hired Stout Risius Ross ("SRR") to provide it with a valuation of HAI for the ESOP Transaction.

37. Wilmington Trust hired Taylor English Duma LLP ("Taylor English") to provide it with a legal opinion for the ESOP Transaction.

38. The U.S. District Court for the Eastern District of Virginia decided a case with the same trustee (Wilmington Trust); same kind of transaction (a leveraged ESOP transaction); same seller advisor (CSG), same valuation advisor to the trustee (SRR). *See Brundle v. Wilmington Trust N.A.*, 241 F. Supp. 3d 610 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019). The *Brundle* court found that Wilmington Trust has a "tendency to rubber stamp whatever Constellis [the plan's sponsor] and SRR put in front of it." 241 F. Supp. 3d at 642. The ESOP community is very "incestuous" and SRR became "excessively" familiar with CSG who could observe its valuation

methods, and SRR even shared its "valuation strategies" at a "very granular level" with CSG while it was advising the trustee on the acquisition of company stock. *Id.* at 643.

39. Wilmington Trust, CSG, and SRR have done multiple ESOP transactions together, yielding tens of millions of dollars in overpayments to selling shareholders and saddling employees with over-valued stock and excessive debt. In the wake of litigation over Wilmington Trust, CSG, and SRR ESOP transactions, Wilmington Trust has sued SRR twice for providing flawed valuations.

40. Wilmington Trust's Assistant Vice President and Fiduciary Services Sub-Committee ("FSSC") member Greg Golden testified that Wilmington Trust does a lesser level of due diligence as an ESOP trustee than does a so-called "real world buyer" of a multimillion-dollar company. *Id.* at 637. Following trial, the *Brundle* court ruled that Wilmington Trust caused a prohibited transaction by failing to ensure that the plan paid no more than adequate consideration for company stock and "damaged the ESOP by agreeing to overpay $29,773,250.00 for the stock." *Id.* at 649. Plaintiff alleges the same thing happened here.

41. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan did not receive a discount for lack of control and paid a control premium for HAI even though the Plan did not obtain control over HAI upon its purchase of the Company, as the Selling Shareholders continued to control the company. Such post-transaction control are a feature of CSG-advised transactions. After the ESOP Transaction, the Selling Shareholders retained control of HAI by holding or controlling HAI board membership via their warrants. Application of a control premium was an incorrect valuation methodology. The Plan therefore overpaid for HAI stock.

7

42. As Trustee, Wilmington Trust is liable for causing the Plan to pay more than fair market value for HAI stock as a result of the failure to receive a discount for lack of control, the payment of a control premium where previous owners retained control of HAI, and/or other factors in Wilmington Trust's decision to purchase HAIBSC stock for the Plan in the ESOP Transaction.

43. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Wilmington Trust did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. Wilmington Trust's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for HAI stock in the ESOP Transaction due to Wilmington Trust's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the valuation of HAI stock in the ESOP Transaction faulty.

44. Incentives to Wilmington Trust to act in favor of the Selling Shareholders in the ESOP Transaction included the possibility of business from sellers of companies who understood that Wilmington Trust believed a lesser degree of due diligence was needed for ESOP purchases of businesses than for non-ESOP-buyers' purchases of businesses, which Wilmington Trust distinguished as "real world" transactions, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

45. Wilmington Trust is liable to the Plan for the difference between the price paid by the Plan and the actual value of HAI shares at the time of the ESOP Transaction.

46.     Wilmington Trust has received consideration for its own personal account from HAI for its services in the ESOP Transaction in the form of fees, under a contract made when the Selling Shareholders owned HAI.

47.     Wilmington Trust's regular practice is to include an indemnification agreement in its engagement agreements to provide services as the transactional trustee in ESOP stock purchase transactions. One such agreement was a trial exhibit in *Brundle v. Wilmington Trust N.A.*

48.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Pursuant to Wilmington Trust's engagement agreement, HAI, at a time that it was owned by the Selling Shareholders, agreed to indemnify Wilmington Trust as Plan Trustee in connection with the ESOP Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation. The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406.

49.     The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because Wilmington Trust violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

50.     Payment by HAI of millions of dollars of attorneys' fees, costs and litigation expenses to Wilmington Trust necessarily would adversely impact HAI's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Wilmington Trust's defense costs by HAI, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

51. Advancing of millions of dollars in attorneys' fees, costs and litigation expenses to Wilmington Trust necessarily would adversely impact HAI's equity value and therefore the value of Plan assets even if Wilmington Trust is eventually ordered to reimburse HAI. The indemnification agreement does not require payment of interest or otherwise account for the time value of money.

## CLAIMS FOR RELIEF

### COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against Wilmington Trust**

52. Plaintiff incorporates the preceding paragraphs as though set forth herein.

53. ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Wilmington Trust, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here HAI stock, with a party in interest, here the Selling Shareholders, as took place in the ESOP Transaction.

54. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Wilmington Trust from causing the Plan to borrow money from a party in interest, here HAI, as took place in the ESOP Transaction.

55. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Wilmington Trust from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for HAI stock and in continuing payments on the loan.

56. The stock and loan transactions between the Plan and the parties in interest were authorized by Wilmington Trust in its capacity as Trustee for the Plan.

57. Wilmington Trust caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

58. ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

59. Wilmington Trust caused the Plan to acquire HAI stock from the Selling Shareholders above fair market value and with the proceeds of a loan that was used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though Wilmington Trust was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

60. Wilmington Trust received consideration for its own personal account from HAI—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

61. Wilmington Trust caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

62. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

63. ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

64. Wilmington Trust has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Wilmington Trust

65. Plaintiff incorporates the preceding paragraphs as though set forth herein.

66. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

67. The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

68. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any

losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

69. ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

70. Wilmington Trust was required to undertake an appropriate and independent investigation of the fair market value of HAI stock in August 2014 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the HAI stock purchased by the Plan.

71. Wilmington Trust breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

72. Wilmington Trust has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B),
### 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Wilmington Trust

73. Plaintiff incorporates the preceding paragraphs as though set forth herein.

74. ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve Wilmington Trust, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

75. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

76. ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

77. The indemnification agreement purports to provide payment or reimbursement for the benefit of Wilmington Trust for its losses, costs, expenses or other damages, including but not limited to attorney's fees.

78. To the extent that the indemnification agreement attempts to relieve Wilmington Trust of its responsibility or liability to discharge its duties under ERISA, or attempts to have HAI (a Plan-owned company) and thereby the Plan be responsible for Wilmington Trust's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

79. To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation

of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

80. As a result of the foregoing, should it be held liable under the preceding Count I, Wilmington Trust should be ordered to disgorge any indemnification payments made by HAI and/or the Plan, plus interest.

## CLASS ACTION ALLEGATIONS

81. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the HealthCare Appraisers, Inc. ESOP (the "Plan") and the beneficiaries of such participants as of the date of the 2014 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold the stock of HealthCare Appraisers, Inc. ("HAI") to the Plan in August 2014, and their immediate families; the directors and officers of HAI and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

82. The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's most recent Form 5500 filing reports that as of December 31, 2018, there were 124 participants in the Plan.

83. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

> i. Whether Wilmington Trust served as Trustee in the Plan's acquisition of HAI stock;
>
> ii. Whether Wilmington Trust was an ERISA fiduciary of the Plan;

  iii. Whether Wilmington Trust caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase HAI stock and take loans from parties in interest;

  iv. Whether Wilmington Trust engaged in a good faith valuation of the HAI stock in connection with the ESOP Transaction;

  v. Whether Wilmington Trust caused the Plan to pay more than fair market value for HAI stock;

  vi. Whether Wilmington Trust engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

  vii. Whether Wilmington Trust engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

  viii. Whether Wilmington Trust breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of HAI stock in August 2014;

  ix. Whether HAI was a party in interest;

  x. Whether the Selling Shareholders were parties in interest;

  xi. The amount of losses suffered by the Plan and its participants as a result of Wilmington Trust's ERISA violations; and

  xii. The appropriate relief for Wilmington Trust's violations of ERISA.

84. Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the

Plan paid above fair market value and took on excessive loans for HAI stock, resulting in her being allocated fewer shares of stock, and she continues to suffer such losses in the present because Wilmington Trust failed to correct the overpayment by the Plan.

85. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

86. Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Wilmington Trust, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

87. The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendant and for the following relief:

A. Declare that Defendant Wilmington Trust caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B. Declare that Defendant Wilmington Trust breached its fiduciary duties under ERISA to the Plan and the class members;

C. Order Wilmington Trust to make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it has made through use of assets of the Plan;

D.     Order that Wilmington Trust provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

E.     Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

F.     Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendant Wilmington Trust's breaches of ERISA;

G.     Declare that the indemnification agreement between Defendant Wilmington Trust and HAI violates ERISA § 410, 29 U.S.C. § 1110;

H.     Order Defendant Wilmington Trust to reimburse HAI for any money paid by HAI under any indemnification agreement between Wilmington Trust and HAI, plus interest;

I.     Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

J.     Order Defendant Wilmington Trust to disgorge any fees it received in conjunction with its services as Trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

K.     Order Wilmington Trust to pay prejudgment and post-judgment interest;

    L.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel; and

    M.     Award such other and further relief as the Court deems equitable and just.

Dated:    August 25, 2020

| **BAILEY & GLASSER LLP** | **BAILEY & GLASSER LLP** |
|---|---|
| Gregory Y. Porter (*pro hac vice* to be filed) <br> Ryan T. Jenny (*pro hac vice* to be filed) <br> 1055 Thomas Jefferson Street, NW <br> Suite 540 <br> Washington, DC 20007 <br> Telephone: (202) 463-2101 <br> Facsimile: (202) 463-2103 <br> gporter@baileyglasser.com <br> rjenny@baileyglasser.com | */s/ David A. Felice* <br> David A. Felice (#4090) <br> Red Clay Center at Little Falls <br> 2961 Centerville Road, Suite 302 <br> Wilmington, DE  19808 <br> Telephone: (302) 504-6333 <br> Facsimile: (302) 504-6334 <br> dfelice@baileyglasser.com <br><br> *Attorneys for Plaintiff* |